(2) the standing at the bar of counsel on both sides;

(3) the time spent by plaintiff's counsel;

(4) the magnitude and complexity of the litigation;

(5) the responsibility undertaken by counsel;

(6) the amount recovered; and

(7) the Court's knowledge of the quality of counsel's work done on the case in and out of Court.[25]

In accordance with the above considerations, plaintiff's counsel will be allowed reasonable attorneys fees after a hearing is held.

---

25. See generally, Comment, Attorney's Fees in Individual and Class Action Anti-trust Litigation, 60 Calif.L.Rev. 1656 (1972); cited with approval in Morning Pioneer, Inc. v. Bismarck Tribune Co., supra.

**SALEM INN, INC., and M & L Rest, Inc., Plaintiffs,**

v.

**Louis J. FRANK, Individually and as Police Commissioner of Nassau County, et al., Defendants.**

**No. 74–C–1108.**

United States District Court, E. D. New York.

Sept. 10, 1974.

Kassner & Detsky, New York City, for plaintiffs; Herbert S. Kassner, New York City, of counsel.

Joseph Jaspan, County Atty. Nassau County, Mineola, N. Y., for defendant Louis J. Frank.

Joseph H. Darago and Joseph A. Guarino, Manhasset, N. Y., for defendant Frank Doran.

Ressa & Nappi, Port Washington, N. Y., for defendant Howard Einhorn; Ralph A. Nappi, Port Washington, N. Y., of counsel.

BARTELS, District Judge.

This is the second attempt of the Town of North Hempstead by ordinance to prevent "topless" dancing within its boundaries. Plaintiffs, owners of two bars in North Hempstead featuring topless dancing, bring this action pursuant to 28 U.S.C. § 2201, seeking a preliminary injunction, a permanent injunction and a declaratory judgment against the enforcement of Chapter 11 of the Code

of the Town of North Hempstead [1] charging a violation of their civil rights under 42 U.S.C. § 1983. The ordinance prohibits owners or operators of cabarets, bars, lounges, dance halls, discotheques, restaurants, or coffee shops from permitting any waitress, barmaid, female entertainer or any other female person in the employ thereof to appear before the public with uncovered breasts, and likewise forbids any female person to appear with uncovered breasts in any of the said places. A fine of up to $500 and imprisonment of up to one year are provided for each offense. Unlike the ordinance enjoined in September, 1973, Salem Inn, Inc. v. Frank, 364 F.Supp. 478 (E.D.N.Y.1973), affirmed, 501 F.2d 18 (2d Cir., 1974), (*"Salem Inn I"*), this ordinance applies only to the above enumerated places and not to "any other public place." In all other relevant respects the ordinance is identical.

---

1. Chapter 11 of the Code of the Town of North Hempstead provides, in part:

"SECTION 1.0 Legislative Purpose—

The Town Board of the Town of North Hempstead does hereby find that there exists in this Town an increasing trend toward nude and semi-nude acts, exhibitions and entertainment, and of undress by female employees of bars and restaurants where food or alcoholic beverages are sold to the public, and that such acts and such competitive commercial exploitation of nudity is adverse to the public peace, morals and good order; that it is in the best interest of the public safety and welfare of this Town to restrict such nudity and the commercial promotion and exploitation thereof in bars and restaurants where food or alcoholic beverages are sold, as hereinafter set forth.

The Town Board of the Town of North Hempstead further finds that it is solely within the powers of the State of New York as delegated to the State Liquor Authority to regulate and control the manufacture, sale and distribution within the State of alcoholic beverages, for the purpose of fostering and promoting temperance in their consumption and respect for an obedience to law; and that the same should be augmented not inconsistent with State power by local regulation of conduct of persons engaged in the sale to the public of food and drink and alcoholic beverages, and those persons who are in their employ.

It is, therefore, declared to be the policy of the Town Board of the Town of North Hempstead that in order to preserve public peace and good order, and to safeguard the health, safety, welfare and morals within the unincorporated area of the Town of North Hempstead, it is necessary to regulate and control the conduct of owners and operators of cabarets, bars, lounges, dance halls, discotheques and places which serve food or alcoholic beverages so as to fix certain responsibilities and duties of persons owning, operating or controlling such establishments and all persons employed, whether for hire or not, in such establishments.

\* \* \* \* \*

SECTION 3.0 Provisions—

3.1. It shall be unlawful for any person maintaining, owning or operating a cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop within the Town of North Hempstead:

a. to suffer or permit any waitress, barmaid, female entertainer or other female person in the employ thereof who appears before or deals with the public in attendance therein to appear in such manner that the portion of her breast below the top of the areola is not covered with a fully opaque cover or that one or both breasts are wholly exposed to view.

b. to suffer or permit any person in the employ thereof who appears before or deals with the public in attendance therein to appear in such manner as to actually display or simulate the display of the pubic hair, anus, vulva or genitals.

3.2 a. It shall be unlawful for any female person to appear in any cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop within the Town of North Hempstead in such a manner that the portion of her breasts below the top of the areola is not covered with a fully opaque cover or that one or both breasts are wholly exposed to view.

b. It shall be unlawful for any person to appear in any cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop within the Town of North Hempstead in such a manner as to actually display or simulate the display of the pubic hair, anus, vulva or genitals.

\* \* \* \* \*

SECTION 9.0 Penalties—

Any person who shall violate any section of this local law shall be guilty of a misdemeanor punishable by a fine not exceeding $500.00 or imprisonment for a period not to exceed one year, or both. Each days continued violation shall constitute a separate violation."

After the passage of the new ordinance on July 23, 1974, arrests were made of the owner and two of the dancers at the Interlude Lounge, a plaintiff in the earlier action. Upon hearing of these arrests plaintiffs Salem Inn, Inc. and M & L Rest, Inc. immediately terminated topless dancing because of their fear of arrest and instituted this action for an injunction and declaratory judgment on the grounds that the ordinance violates the First Amendment by placing an overbroad restriction on constitutionally protected speech and the Equal Protection clause of the Fourteenth Amendment by restricting its application to certain enumerated places.

## I

■■ Defendants assert that this is a proper case for abstention, citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27. L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). They contend that because the owner of the Interlude Lounge was a plaintiff in *Salem Inn I* along with the plaintiffs herein, the interests of all plaintiffs would be adequately protected by the state court adjudication of Interlude's constitutional claims. Since there are no state criminal actions actually pending against either of the plaintiffs, we are bound by Steffle v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 1221 n. 19, 39 L.Ed.2d 505 (1974), and Thoms v. Heffernan, 473 F.2d 478, 485 (2d Cir. 1973). The action pending against the Interlude Lounge is not a sufficient reason for this Court to abstain with respect to the plaintiffs who have complied with the ordinance but are threatened with prosecution upon violation. Just as in *Steffle* and *Thoms, supra,* plaintiffs here have a justiciable interest in preventing future enforcement of the ordinance against them and in the absence of any agreemen to stay enforcement pending resolution of the state prosecution against Interlude, we find no reason to abstain. 414 Theater Corp. v. Murphy, 360 F.Supp. 34, 35 (S.D.N.Y.1973), affirmed, 499 F.2d

1155, (2d Cir., 1974); see also Citizens for a Better Environment, Inc. v. Nassau County, 488 F.2d 1353 (2d Cir. 1973). This is particularly true where there is no room for a narrowing state court construction of the plain language of the ordinance. Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Consequently, since it is the primary obligation of the lower federal courts to vindicate every right given by the Constitution of the United States, we cannot abstain but must resolve the issue. Steffle v. Thompson, *supra,* 94 S.Ct. at 1218; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Salem Inn I, supra,* 501 F.2d at 22; Frankfurter & Landis, The Business of the Supreme Court 65 (1928).

## II

■■ Like the ordinance in *Salem Inn I,* the ordinance at issue does not purport to classify the prohibited activity as "obscene" conduct but only as nude conduct which defendants contend does not include free expression protected by the First Amendment. A similar approach in an almost identical ordinance was approved by the Supreme Court of California in Crownover v. Musick, 9 Cal.3d 405, 107 Cal.Rptr. 681, 509 P.2d 497 (1973), (two dissents), cert. denied sub nom. Owen v. Musick, Reynolds v. Sacramento County, 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed. 489 (1974), overruling In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968). While the views expressed in *Crownover* have been followed in several jurisdictions, Portland v. Derrington, 253 Or. 289, 451 P.2d 111 (Ore.1969); Yauch v. State, 109 Ariz. 576, 514 P.2d 709 (1973), the Second Circuit has held that dancing, even nude dancing, may fall within the purview of First Amendment protections. *Salem Inn I, supra*; see also California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); Wood v. Moore, 350 F.Supp. 29 (W.D. N.C.1972). The Supreme Court has held that not all conduct "can be labeled

'speech' whenever the person engaging in the conduct intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). It is a matter of balancing the speech elements of the conduct and the governmental interest in regulating that conduct. Konigsburg v. State Bar, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961). In that connection it seems to us that all dancing is not *per se* a mode of expression protected by the First Amendment. Were the slate clean we might well be persuaded by the reasoning of *Crownover, supra*. Few could reasonably deny that ballet and certain ethnic folk dances communicate stories and ideas, but no one could reasonably contend that the entertainment afforded by plaintiffs falls within these categories. Certainly such so-called dancing is not akin to the Bolshoi, American, Canadian, Royal or any other ballet. It may best be characterized as an exhibition of female breasts to attract bar customers. However, while the entertainment offered in plaintiffs' bars might properly be prohibited by a narrowly drawn ordinance, plaintiffs are entitled to attack this ordinance as facially overbroad. *Salem Inn I, supra*, 501 F.2d at 21; Gooding v. Wilson, 405 U.S. 518, 92 S. Ct. 1103, 31 L.Ed.2d 408 (1972); Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

■ There are many marginal and borderline cases and this appears to be one. The sweep of this ordinance is so wide, however, that it may be applied to communicative dancing and theatrical productions just because they involve nudity such as the Ballet Africains and "Hair," PBIC, Inc. v. Byrne, 313 F. Supp. 757 (D.Mass.1970), judgment vacated and remanded to consider mootness, 401 U.S. 987, 91 S.Ct. 1222, 28 L. Ed.2d 526 (1971); Southeastern Promotions, Ltd. v. Atlanta, 334 F.Supp. 634 (N.D.Ga.1971); Southeastern Promotions, Ltd. v. City of Charlotte, 333 F. Supp. 345 (W.D.N.C.1971); Southeastern Promotions, Ltd. v. Mobile, 457 F.2d 340 (5th Cir. 1972). The mere fact that

the place where a method of expression may be presented happens to be a bar or a cabaret does not strip it of constitutional protection. California v. LaRue, *supra*; Escheat, Inc. v. Pierstorff, 354 F.Supp. 1120 (W.D.Wis.1973); *cf.* Schact v. United States, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970); but see Yauch v. State, *supra*, 514 P.2d at 711. Thus, while the ordinance is not directed to pure speech but is limited only to the "conduct" of nudity, it may result in an infringement upon free expression when such conduct is an integral part of a communicative dance or play.

In support of the ordinance the defendants assert that the commercial exploitation of nudity existing in the enumerated establishments is "adverse to the public peace, morals and good order." Ch. 11, Code of the Town of North Hempstead. Prior to the passage of the ordinance, the Town held a public hearing which was replete with complaints of noise, litter, and offensive conduct by patrons of "topless" bars owned by plaintiffs and others. Complaints were voiced about the operation of the establishments in the late afternoon when schoolchildren must walk past and late at night when noise disturbs the neighbors. It was admitted that the dancing in the bars could not be seen from the street although children on occasion attempted to look through the windows. Objections were also raised as to the large percentage of customers from outside the Town and the fact that the reputation of the Town was being damaged by the presence of the bars. There was no testimony that any of the conditions arising from the entertainment itself caused a type of "Bacchanalian revelries" described in California v. LaRue, *supra*, e. g., sexual contact between entertainers and customers, prostitution, and rape.

■ The government has an interest and a right under its police power to regulate and in certain circumstances to prohibit conduct involving public nudity. See United States v. Hymans, 463 F.2d 615 (10th Cir. 1972). But when this

conduct also contains a speech element, thus affecting First Amendment rights, the burden rests upon the government to demonstrate that the regulations or prohibitions are necessary to promote a compelling governmental interest, such as protection of public health, safety, peace and morals. In addition it should be clear that there is no reasonable way to achieve these goals with a lesser burden on this constitutionally protected activity. *O'Brien, supra*; O'Neill v. Dent, 364 F.Supp. 565 (E.D.N.Y.1973). The challenged ordinance plainly covers a field much wider than is essential to further the Town's interest in dealing with the nuisance conditions complained of at the public hearing. Instead of dealing with the specific conditions, the ordinance focuses on an activity which can contain protected expression and which has not been shown to be the source of the problem. Similar problems of crowds, noise and litter are frequently presented by many forms of public entertainment such as sporting events, rock concerts, political rallies, etc., and it would be equally unreasonable to ban such events in order to correct problems which can be best attacked through regulation of zoning, parking, hours of operation, etc. *Cf*. Taylor v. City of Chesapeake, 312 F.Supp. 713 (E.D.Va.1970).

### III

The application of the ordinance only to bars, lounges, coffee shops, discotheques, etc., and not to theaters, opera houses and concert halls is also challenged on equal protection grounds. Since the location classification here involves the exercise of fundamental rights protected by the First Amendment, the classification must again serve a "compelling state interest" to withstand such an attack. Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); O'Neill v. Dent, *supra*. While restrictions applied only to places serving alcoholic beverages have been upheld in certain circumstances involving the Twenty-First Amendment, California v. LaRue, *supra*; Paladino v. City of Omaha, 471 F.2d 812 (8th Cir. 1972); Salem v. Liquor Control Comm., 298 N.E.2d 138, 34 Ohio St. 2d 244 (1973), the ordinance here applies its restrictions to coffee shops, restaurants and even dance halls and discotheques. It is difficult to determine what compelling state interest could be served by an ordinance which would bar a production of "Hair" at a cabaret and allow nude dancing in a burlesque theater.

Thus, we are constrained to hold once again, and we might add reluctantly, that the attempt of the Town of North Hempstead to prohibit "topless" dancing through Chapter 11 of its Code is on its face violative of plaintiffs' rights under the First Amendment since it includes within its prohibition constitutionally protected expression and also that it violates their rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs have demonstrated in the record that they will suffer a substantial loss of business by the enforcement of the ordinance and for this and the other reasons set out in *Salem Inn I, supra*, we find that federal intervention and injunctive relief are justified. See 414 Theater Corp. v. Murphy, *supra*, 499 F.2d at 1159–1160.

Therefore, it is ordered that pending the final determination of this action, the defendants are hereby enjoined from prosecuting the plaintiffs for any violation of Chapter 11 of the Code of the Town of North Hempstead or in any way interfering with their activities which may be prohibited by the text of said Chapter.